IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRANSFIELD ER CAPE LIMITED (IN LIQUIDATION)<br>        Plaintiff,<br>vs.<br><br>NORTH CHINA SHIPPING LIMITED;<br>NORTH CHINA SHIPPING HOLDINGS COMPANY LIMITED, HONG KONG;<br>GREAT PERIOD INVESTMENTS LIMITED;<br>MARINA PERIDOT SHIPPING LIMITED<br>        Defendants. | IN ADMIRALTY<br><br>CASE NO.:<br><br>ORIGINAL VERIFIED COMPLAINT |

Plaintiff, TRANSFIELD ER CAPE LIMITED (IN LIQUIDATION), by undersigned counsel, for its Original Verified Complaint against Defendants: NORTH CHINA SHIPPING LIMITED, NORTH CHINA SHIPPING HOLDINGS COMPANY LIMITED, HONG KONG, GREAT PERIOD INVESTMENTS LIMITED and MARINA PERIDOT SHIPPING LIMITED, alleges and pleads as follows:

## I. JURISDICTION, VENUE AND PARTIES

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract *i.e,.* an executed time charter party for the employment of a seagoing cargo vessel. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333,

VERIFIED COMPLAINT - 1

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1 | and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration.

2. At all times material hereto Plaintiff, TRANSFIELD ER CAPE LIMITED (IN LIQUIDATION) (hereinafter "TRANSFIELD"), was a company organized under the laws of the British Virgin Islands. TRANSFIELD is currently in liquidation under the provisions of the British Virgin Islands Insolvency Act 2003, and this action is being pursued by TRANSFIELD's joint liquidators, Russell Crumpler of KPMG (BVI) Limited), Bob Yap Cheng Ghee (of KPMG Advisory Services Pte., Ltd.) and Patrick Cowley (of KPMG).

3. At all times material hereto Defendant, NORTH CHINA SHIPPING LIMITED (hereinafter "NCS BAHAMAS"), was and is a foreign company purportedly organized under the laws of the Bahamas with a registered office at OffShore Group Chambers, P.O. Box CB 12751, Nassau, Bahamas, and a principal office address located at 3503-3510, 35th floor, West Tower, Shun Tak Centre, 168-200 Connaught Road Central, Sheung Wan, Hong Kong.

4. At all times material hereto Defendant, NORTH CHINA SHIPPING HOLDINGS COMPANY LIMITED, HONG KONG. (hereinafter "NORTH CHINA HK"), was and is a foreign company purportedly organized under the laws of the Cayman Islands with a purported registered office at Century Yard, Cricket Square, Hutchins Drive, P.O. Box 2681GT, George Town, Grand Cayman, and a principal office address located at 3503-3510, 35th floor, West Tower, Shun Tak Centre, 168-200 Connaught Road Central, Sheung Wan, Hong Kong. *A copy of NORTH CHINA HK's Annual Return of a Non-Hong Kong Company filed with the Hong Kong Companies Registry is attached hereto as **Exhibit 1***.

5. At all times material hereto Defendant, GREAT PERIOD INVESTMENTS LIMITED (hereinafter "GREAT PERIOD"), was and is a foreign company purportedly organized under the laws of the British Virgin Islands with a registered office at P.O Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands. GREAT

VERIFIED COMPLAINT - 2

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

PERIOD has its principal office address at 3503-3510, 35th floor, West Tower, Shun Tak Centre, 168-200 Connaught Road Central, Sheung Wan, Hong Kong.  *A copy of GREAT PERIOD's Annual Return of a Non-Hong Kong Company filed with the Hong Kong Companies Registry is attached hereto as* **Exhibit 2**.

6. At all times material hereto Defendant, MARINA PERIDOT SHIPPING LIMITED (hereinafter "MARINA"), was and is a foreign company organized under the laws of Hong Kong with a registered office at 20th Floor, Standard Chartered Building, 4-4A Des Voeux Road Central, Hong Kong, and the registered owner of the bulk carrier M/V OEL CONFIDENCE (IMO Number: 9628910).  Defendant MARINA has its principal business address "care of" Defendant NORTH CHINA HK.  *See documents attached hereto as* **Exhibit 3**.

7. The jurisdiction of this Honorable Court is founded on the presence within the District of property of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, as pled in Section V of this Verified Complaint.

8. Venue is proper in this matter as the property sought to be attached, *i.e.* the M/V OEL CONFIDENCE (IMO Number: 9628910), is now or will shortly be located within the Western District of Washington, Tacoma Division.  Specifically, the vessel is scheduled to call at the port of Tacoma on or about December 30, 2012.

## II. THE SUBSTANTIVE CLAIMS

9. Plaintiff chartered the vessel, M/V MINERAL HOKKAIDO, from Bocimar International N.V. (hereinafter "BOCIMAR"), pursuant to a time charter party dated April 20, 2007.  *A copy of this "head charter party" is attached hereto as* **Exhibit 4**.

10. On or about November 20, 2007, Plaintiff, as disponent owners of the M/V MINERAL HOKKAIDO, sub-chartered the vessel on an amended NYPE 1946 form to NCS BAHAMAS for a time charter of "minimum 59 to maximum 61 months." The charter

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

agreement between Plaintiff and Defendant NCS BAHAMAS set forth specific terms as per the fixture recap and "otherwise as per back to back head CP with logical alterations only." *A copy of the charter party and fixture recap is attached hereto as **Exhibit 5**.*

11.  The November 20 sub-charter party agreement, by and between Plaintiff and Defendant NCS BAHAMAS, is a maritime contract.

12.  Under the terms of the time charter party, NCS BAHAMAS was required to pay **USD** 83,000 per day to Plaintiff payable every fifteen (15) days in advance. *See* Exhibit 5, fixture recap at pg. 2.  Defendant was also required to remit **USD** 1,500 per month for cable and phone costs. *See* Exhibit 5, charter party at clause 78.

13.  In addition, NCS BAHAMAS was required to furnish the vessel's Captain with all requisite instructions and sailing directions.  See Exhibit 5, charter party at ll. 86.

14.  The parties further agreed to the arbitration of disputes arising out of the maritime contract in London with English law to apply.

15.  Plaintiff duly delivered the M/V MINERAL HOKKAIDO as required under the charter party to NCS BAHAMAS on July 25, 2008.

16.  Thereafter, Plaintiff routinely issued its hire invoices to NCS BAHAMAS "care of" Defendant NORTH CHINA HK.  Defendant NCS BAHAMAS timely remitted payments up to and including the seventieth (70th) hire invoice under the sub-charter party to Plaintiff.

17.  On June 8, 2011, Plaintiff provided its 71st hire statement, showing **USD** 1,212,219.56 due on or before June 10, 2011 to Defendant NCS BAHAMAS. *A copy of the 71st hire statement is attached hereto as **Exhibit 6**.*

18.  On June 11, 2011, Plaintiff, by and through its attorneys, served a notice of default advising Defendant NCS BAHAMAS that the 71st hire payment had not been received and, in accordance with clause 31 of the sub-charter party, said payment must be received by Plaintiff within three (3) business days. *A copy of this notice is attached hereto as **Exhibit 7**.*

19.  Notwithstanding, Defendant NCS BAHAMAS, in breach of the express terms

VERIFIED COMPLAINT - 4

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

of the charter party, neglected, failed or otherwise refused to pay the 71st hire payment of **USD 1,212,219.56**. In addition, Defendant NCS BAHAMAS failed to provide the M/V MINERAL HOKKAIDO with any sailing instructions and simply walked away from the charter.

20. Defendant NCS BAHAMAS's conduct is tantamount to repudiation of the Charter, which entitles Plaintiff, at its election, to accept the repudiation and seek damages for loss of revenue.

21. By notice dated June 17, 2011, Plaintiff accepted Defendant NCS BAHAMAS's repudiatory breach of the charter party and withdrew the M/V MINERAL HOKKAIDO from service. *A copy of notice is attached hereto as **Exhibit 8**.*

22. Plaintiff's loss of revenue is the difference between the charter hire rate of **USD 83,000** per day and the market rate at or shortly after the date of termination for the remainder of the charter period. As best as can be estimated at this time, Plaintiff's loss is likely to be in excess of **USD 49,909,837.29**[1].

23. Off setting the value of the bunkers onboard the M/V MINERAL HOKKAIDO at withdrawal, the sums due under the charter at the time of Defendant's repudiation was **USD 180,560.79**. *A copy of the Provisional Final Hire Statement is attached hereto as **Exhibit 9**.*

24. In consequence of the foregoing, Plaintiff sustained principal damages in the amount of approximately **USD 50,090,344.08**.

25. As part of the scope of the Joint Liquidators' duties, they are seeking to recover the indisputable sums due under the sub-charter party to TRANSFIELD by Defendant NCS BAHAMAS. Plaintiff, by and through its Joint Liquidators, has duly demanded payment from Defendant NCS BAHAMAS and also, in the alternative, sought security from Defendant for its arbitration claim, both of which Defendant has refused and resisted.

---

[1] These damages are calculated by taking the difference between the net charter rate of USD 79,887.50 per day and the net market rate of USD 12,350 per day and multiplying this number by the remaining charter period. USD 67,537.50 per day x 738 days, 23 hours and 52 minutes = USD 49,909,837.29.

VERIFIED COMPLAINT - 5

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

## III. UNDERLYING PROCEEDINGS ON THE MERITS

26. Pursuant to the terms of the charter party, disputes between the Plaintiff and Defendant are to be submitted to arbitration in London with English law to apply. Plaintiff duly commenced arbitration against Defendant NCS BAHAMAS on June 24, 2011. *A copy of Plaintiff's Notice of Appointment of Arbitrator is attached hereto as* **Exhibit 9-A**.

27. Section 8 of the Federal Arbitration Act, expressly permits an aggrieved party to use the federal courts to commence litigation in order to seize property by maritime arrest or attachment for security purposes. *See* 9 U.S.C. § 8.

28. Accordingly, Plaintiff commences this action to obtain security from Defendants for Plaintiff's claim, which is currently pending in London arbitration. Said security will be used to satisfy Plaintiff's eventual arbitration award.

29. Plaintiff has claimed the full amounts noted above, together with interest, costs and legal fees, which are recoverable under the rules governing maritime arbitration in London. Plaintiff estimates the legal costs associated with the pending arbitration will be approximately **USD 750,000**.

30. This action is an ancillary proceeding, brought in order to obtain jurisdiction over Defendants and to obtain security for Plaintiff's claims in aid of the London arbitration proceedings.

31. As best as can now be estimated, Plaintiff expects to recover the following amount in London arbitration:

| | |
|---|---|
| A. Principal claim: | $ 50,090,344.08 |
| B. Estimated Attorney's Fees | $      750,000.00 |
| C. Interest on unpaid principal for 2 years | $   6,336,057.19 |
| *calculated at 6%, compounded quarterly* | |
| **Total Claim:** | **$ 57,176,401.27** |

VERIFIED COMPLAINT - 6

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1  Therefore, Plaintiff's total claim for breach of the maritime contract against Defendants is in
2  the aggregate sum of **USD 57,176,401.27.**

### IV. DEFENDANTS' CORPORATE IDENTITY

*A. Domination and Control*

32. Notwithstanding their formal separate incorporation, the Defendants are in actual fact a single business entity pursuing functionally differentiated business objectives through nominally separate business structures but always subject to the command and control of NORTH CHINA HK.

33. Plaintiff's investigation through reputable corporate search agencies has disclosed that Defendant NCS BAHAMAS's does not have a physical or mechanical presence within the Bahamas. Instead, all day-to-day commercial activities are undertaken from the office of NORTH CHINA HK in Hong Kong.

34. Upon information and belief, Defendant NCS BAHAMAS is an offshore shell company owned in its entirety by Defendant NORTH CHINA HK and subject to its complete control.

35. Upon information and belief and at all times material hereto, Defendant NCS BAHAMAS was and is used as the chartering arm of NORTH CHINA HK for the chartering of commercial vessels. Defendant NCS BAHAMAS has no independent existence, is incapable of self governance and is used for the commercial benefit of Defendant NORTH CHINA HK.

36. Throughout the course of the charter party, all invoices and notices were sent to Defendant NCS BAHAMAS care of NORTH CHINA HK at its principal office in Hong Kong. *See* Exhibits 6, 7 and 8.

37. Defendants NCS BAHAMAS, NORTH CHINA HK and GREAT PERIOD all share the same principal business address at: 3503-3510, 35th floor, West Tower, Shun Tak Centre, 168-200 Connaught Road Central, Sheung Wan, Hong Kong. *See* Exhibit 1 and

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

Exhibit 2 respectively.

38. While Defendant MARINA lists a registered office in Hong Kong, the company is simply a "brass plate" possessing no active office space, employees or telephone numbers at this location. Instead, all company business is conducted by and through NORTH CHINA HK's office in Hong Kong. *See Equasis reports for Defendant MARINA and the OEL CONFIDENCE attached hereto as* **Exhibit 10**. *See also* Exhibit 3.

39. In addition, Defendants NCS BAHAMAS, GREAT PERIOD and NORTH CHINA HK all maintain an overlapping cast of corporate officers and directors.

40. Mr. Gao Yan Ming is a former director of NCS BAHAMAS. *See copy of Register of Directors and Register of Officers of NCS BAHAMAS attached hereto as* **Exhibit 11**. Mr. Ming also serves as a director of NORTH CHINA HK and the sole director of GREAT PERIOD. *See* Exhibit 1 and Exhibit 2.

41. Wang Li Jun serves concurrently as president of NCS BAHAMAS, director of Defendant NORTH CHINA HK and secretary of Defendant GREAT PERIOD. *See* Exhibits 1, 2 and 11.

42. On multiple occasions, Mr. Yue Feng (Andrew) Yi, the corporate secretary of NORTH CHINA HK, acted as a corporate representative of NCS BAHAMAS in discussions with Plaintiff's representatives. All correspondence sent by Mr. Yi was placed on NORTH CHINA HK's company letter head. *See relevant correspondence attached hereto as* **Exhibit 12**. *See also* Exhibit 1 at page 4.

<u>B. Defendants' Fraudulent Trading Practices</u>

43. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 42 of this Complaint as if same were fully set forth herein.

44. Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are distinct from one another merely as a matter of formality. As is pled more specifically below, Defendant

VERIFIED COMPLAINT - 8

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

MARINA is believed to be another mere alter ego of the NORTH CHINA HK group of companies created as a fraudulent debt avoidance technique.

45. Plaintiff's investigations have revealed that the M/V OEL CONFIDENCE, the sole asset of its "registered owner" Defendant MARINA, may actually be beneficially owned by Defendant GREAT PERIOD.

46. In December 2008, approximately thirteen (13) months after Plaintiff and Defendant NCS BAHAMAS executed the sub-charter party contract, the Dry Baltic Index[2] reached a twenty-five (25) year low. This collapse, resulting from the world-wide financial crisis and slowing economic demand, had a widespread effect within the maritime industry[3].

47. As a result of the market collapse, the daily hire rate of **USD** 83,000 under the sub-charter party agreement between Plaintiff and Defendant NCS BAHAMAS was considerably higher than the current market rate.

48. Accordingly, it was within the Defendants' collective financial interests to repudiate any current charter party agreements executed prior to the market collapse.

49. Prior to reneging any of its current charter party contracts, it is believed that the Defendants constructed a labyrinth of corporate shields and purposely shifted assets in an attempt to defraud its impending creditors, specifically Plaintiff, and make the NORTH CHINA group of entities "judgment proof."

50. On April 8, 2011, Defendant MARINA filed its Incorporation Form with the Hong Kong Companies Registry. *A copy of Incorporation Form is attached hereto as **Exhibit 13***.

---

[2] The Baltic Dry Index (BDI) is a number issued daily by the London-based Baltic Exchange. The BDI provides an assessment of the price of moving major raw materials by sea. Taking in 23 shipping routes measured on a timecharter basis, the index covers Handysize, Supramax, Panamax, and Capesize dry bulk carriers carrying a range of commodities including coal, iron ore and grain.

[3] Although the dry bulk market recovered slightly in 2009, the BDI reached another record low in February 2011, a mere four (4) months before Defendant NCS BAHAMAS breached the charter party agreement with Plaintiff.

VERIFIED COMPLAINT - 9

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

51. On or about April 28, 2011, Defendant GREAT PERIOD assigned and/or sold its interests in OEL CONFIDENCE (Hull No. BC8.2-3) to Defendant MARINA in advance of the vessel's delivery from the shipyard. The Guarantor under this agreement was Defendant NORTH CHINA HK. *A copy of the "Mortgage or Charge Details" filed with the Hong Kong Companies Registry and memorializing this event is attached hereto as **Exhibit 14**.*

52. At or about the same time, Defendant MARINA and Defendant GREAT PERIOD executed a bareboat charter party dated April 28, 2011, whereby Defendant MARINA bareboat chartered the OEL CONFIDENCE to Defendant GREAT PERIOD thereby allowing full and complete control over the vessel save for actual "registered" ownership.

53. On or about December 3, 2012, Defendant GREAT PERIOD, purportedly to secure its obligations under the charter party, assigned all of its interests under the bareboat charter, including all earnings and compensation, to Defendant MARINA. *A copy of the "Mortgage or Charge Details" filed with the Hong Kong Companies Registry and memorializing this event is attached hereto as **Exhibit 15**.*

54. Upon information and belief, the bareboat charter between Defendants GREAT PERIOD and MARINA is not true charter party but rather a disguised security instrument, which allows Defendant GREAT PERIOD to maintain exclusive control and beneficial ownership of the OEL CONFIDENCE while Defendant MARINA maintains "registered ownership."

55. Standard Chartered Bank has openly advertised to the shipping industry this type of financial lending, which allows Standard Chartered Bank a greater security interest than a typical ship mortgage. *See press documents attached hereto as **Exhibit 16**.*

56. In addition, by assigning all of its interests under the bareboat charter to Defendant MARINA, Defendant GREAT PERIOD prevents any assets from being held in its name.

57. Upon information and belief, the complex financial arrangement outlined above

VERIFIED COMPLAINT - 10

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

has been and continues to be used by the NORTH CHINA HK group of companies abusively in order to defraud contractual parties and conceal its assets from creditors. The Defendants have attempted to compartmentalize their assets within an international web of purportedly separate shell companies thereby frustrating creditors' efforts to enforce any judgment or award rightfully granted by the relevant tribunal.

## V. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

58.     None of the Defendants are present or can be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims. *See Attorney Declaration of George M. Chalos attached hereto as* **Exhibit 17**. Notwithstanding, the Defendants currently have within the District tangible personal property comprised of the M/V OEL CONFIDENCE, IMO Number 9628910, which is subject to attachment as security for Plaintiff's maritime claims.

59.     Defendants, having operated at all relevant times as a single enterprise, and being the alter ego of each other in the circumstances set in the above and foregoing Original Verified Complaint, it would be fair and equitable for any asset of this enterprise to be subject to the claims of creditors of the enterprise, such as Plaintiff, and for any such assets to be attached as security for Plaintiff's maritime claims.

60.     Alternatively, Defendants have used and are continuing to use their purported corporate separateness abusively, to wit: to engage in fraudulent trading practices and avoid paying damages for the repudiation of the M/V MINERAL HOKKAIDO charter party agreement. Accordingly, it would be fair and equitable to pierce or reversely pierce the corporate veil of NCS BAHAMAS; NORTH CHINA HK; GREAT PERIOD; and MARINA in order to reach the economic value of assets, *i.e.* the M/V OEL CONFIDENCE, which said Defendants have compartmentalized in separate corporate pockets to the detriment of Plaintiff.

///

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555

1      **WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

2      A.    That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Complaint;

     B.    That if Defendants cannot be found within this district, then all of their respective property within this district, specifically the M/V OEL CONFIDENCE, IMO Number 9628910, be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

     C.    That a judgment be entered against the Defendants in the sum of **USD 57,176,401.27** and the proceeds of the assets attached be applied in satisfaction thereof;

     D.    That the Court grant such other and further relief as it deems, just, equitable and proper.

DATED: this 28th of December, 2012.

| | |
|---|---|
| OF COUNSEL:<br>CHALOS & CO, P.C.<br>George M. Chalos (GC-8693)<br>(pro hac vice application forthcoming)<br>55 Hamilton Avenue, Oyster Bay, NY 11771<br>Telephone: (516) 714-4300<br>Telecopier: (516) 750-9051<br>Email: gmc@chaloslaw.com | NICOLL BLACK & FEIG PLLC<br><br>*/s/ Christopher W. Nicoll*<br>*/s/ Jeremy B. Jones*<br>Christopher W. Nicoll, WSBA No. 20771<br>Jeremy B. Jones, WSBA No. 44138<br>Attorneys for Plaintiff<br>*Attorneys for Plaintiff Transfield ER Cape Limited (In Liquidation).* |

VERIFIED COMPLAINT - 12

LAW OFFICES OF
**NICOLL BLACK & FEIG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
TEL: 206-838-7555